Hallums v. Infinity Insurance Mr. Martinez. Good morning, Your Honor. Good morning. May it please the Court, Arturo Martinez for the plaintiffs' appellants, and I promise not to talk about rebel calls right now. The issue here, however, is that Infinity sells a product that is not insurance, and that's the case because the only promise that it makes, which is to indemnify the sort. There's an agency in Florida that reviews Infinity's rates, right? Yes, Your Honor. And including the policy with the endorsement, right? Correct, Your Honor. And approved the rate, right? It approved the rate. So why isn't this barred by the filed rate doctrine? Yes, Your Honor. It seems to me that what you're really complaining about is you don't attack the rate insofar as it provides coverage for your clients, but only that portion of the coverage, the endorsement, that's for the owners. And that's just challenging a portion of the premium that they pay. They pay a total premium, and that seems to me to run right into the filed rate doctrine. That is incorrect, Your Honor, because we're saying that this is not insurance at all, that they cannot charge any. A portion of their premium. A portion of their premium. There is a specific charge for this product, Your Honor. It's a portion of a total premium that they pay, right? There is an aggregate of all the coverage that they pay for. Right. And this is just a portion of that? That is specific to this one product, Your Honor. Right. And that's the claim that you're making, that we're making, that it is not a rate challenge because under, for instance, the cases that we've cited, and they're cited on the reply brief at note 11, page 28. The Gelfound case, the Kaling case, and the Basker case, those cases address situations just like ours were. Just to make sure I'm understanding this point, could this Florida agency regulate this particular product, including shutting it down? In other words, if you went to them and said, this isn't right, what they're doing, would they have authority? I'm not saying whether they would. Would they have the authority to say, Infinity, you can't market this anymore? I understand the question, Your Honor. And we addressed that issue in our briefing in the motion to dismiss because that specific argument was made. And that's not the way the statute works, that what the regulators do is they look at the rates and they determine whether it's excessive, inadequate, or discriminatory. Well, if they look at whether it's excessive, they would be entitled, wouldn't they, to say, well, part of this is just for something that's really no coverage at all. And that's excessive. However, you shouldn't be charging that portion. They'd be able to do that, wouldn't they? However, when they did that, Your Honor, they did that before the Gray's Amendment. So this product, the actual coverage, this product, the sorority liability endorsement, was submitted for review before the Gray's Amendment. And everything that has been submitted thereafter, after the amendment, has been modifications to the initial rates. Well, that seems to hurt you. What you're saying is that that's what they could have done all along or they could do today. But the statute does not cover or does not allow the agency to determine coverage, which is the fundamental question in our case, whether the product provides insurance coverage, whether it is insurance in the first place. That's for the courts to determine. And, for instance, the Patel case, which is the latest pronouncement from this court. But, I mean, just to make sure I'm getting – I'm afraid I'm missing something here. Just, like, this whole dispute started today. You learned about the product or maybe the product's in front of the agency. You could have the agency going forward say, you know, no, you can't charge for this. There's no – it's excessive because there's nothing – there's no risk. That could happen today. Am I right or no? No, Your Honor, because under the framework of the statute, and we addressed that, again, in docket entries number seven, I believe, that that's not the way they review this, that they review the rates, the actual rates. And they do not conduct a coverage determination of the product to say – But why can't they – why couldn't someone say the rate should be zero for this policy? They could make the argument that the rate should be zero only if there's a determination that there is no coverage in the first place, and that's why we're seeking relief from courts. That there should be a determination of whether this promise they make is illusory. What did you say earlier about before and after the Graves Amendment? Yes, Your Honor, that this product was – the actual product, the language of the product was approved prior to the Graves Amendment in 2005. And everything that has been submitted to the agency after that have been rates amendments, amendments to the original rates and not a review of the language of the product in light of the Graves Amendment. I can't understand why that helps – I can't understand why that helps you. I mean, you're saying you can, after the Graves Amendment, go back to the agency and say we'd like to amend the rate? That's what you're saying can happen? That's what Infinity has done. Okay, so can't they go back and have a debate about whether the amendment should be zero, that the rate should go down to zero? Can't that happen? Again, I'm not so sure that that's the way it works because what they're reviewing their rate for is excessiveness or whether it's discriminatory or not. But they're not going to review the product to determine whether it is insurance or not, and that's the fundamental question of the case. So that needs to be determined first, whether this product undertakes a promise, an obligation that – How would it work in your view if someone went back with this exact product, you went to the agency, and you said, listen, there's no risk here. This is wrong. The rate should be zero. And they say, well, we've read that district court decision, and we actually think there's a little bit of risk. So we're going to force you to drop the rate way down, but there's still going to be some cost. So you don't win entirely, but you do get the rate dropped. Are you with me so far? I'm not asking you a question yet. I'm just – are you with me so far in what I'm saying? Yes. Okay. So once that's done, they drop the rate down to just a little bit above zero. Could you then come back to court and bring this exact claim at that point? If the law was that way, that could happen. But the law is not that way because what the law provides for is for an insurance company to submit experience information from the history of claims made under specific scenarios, and that's the way the agency says this is excessive or not. Let me ask you this. Yes, Your Honor. So let's say that you had this claim for vicarious liability that you say is barred by the Graves Amendment, right? The coverage, though, that's provided that is the subject of this part of the premium, it seems to me at least establishes on the part of the insurance a duty to defend against that claim. And the answer to that question is no because for there to be a duty to defend, there would first need to be a duty to indemnify, and that is a specific language. A duty to defend can be broader. I mean you'd have a duty to defend a claim that ends up proving to be not meritorious, right? That principle that the duty to defend is broader than the duty to indemnify has to do with whether a duty to defend is triggered, not whether the duty to defend exists in the first place. So the question of whether duty to defend coverage exists has to do with whether there is a duty to indemnify in the first place, and that is a specific language of this policy that says we will not provide a defense unless there is coverage to begin with. So that's the fundamental question again. If there is a duty to indemnify under this product, then infinity wins because there is also a duty to defend, but if there is no duty to indemnify, then there is no duty to defend, Your Honors. And on those two issues, we believe that the district court was in error. However, it correctly determined the file rate doctrine argument that the court was asking about during the motion to dismiss process, and in making those determinations, it determined that we were not seeking to challenge the rate as excessive or not. They were just going to challenge the actual product, the nature of the product. If the product provides no insurance at all, it doesn't matter what the rate is because we're not saying that you can charge more or less. We're saying that you cannot charge anything at all, Your Honors. And that, again, goes back to the fundamental question of whether this is insurance or not. So the other issue that— Just to help me with this, I'm sorry to stick with the file rate thing, but let's say their product, this exact product, was only offered for women but not for men. Could the agency shut that down? I'm not sure I understand the question. So the infinity offers this exact product, the very product you're challenging, but they say it's only available for women. So I'm making the point it's discriminatory. Okay. Can the agency say, no, you can't sell that product in Florida, and then that ruling would have to be respected by the courts? Is that right or wrong? What the agency would do is that if the product was that the rate is different for women and men, then it would say, yes, you're discriminating against women, and therefore— You're not allowed to sell that product in Florida. Because, yes, because it's a rate issue. It's not a coverage issue. The coverage issue is determined by the courts, and the agency, the review they undertake of this product does not consider that. These are people, technicians that review claim submissions that have been made for a particular circumstance and say, under this experience, it is too high or too low. But they don't go and, say, conduct a legal analysis to determine whether it's coverage or not, Your Honors. Okay. Let's hear from Mr. Cantera. May it please the Court, Raul Cantera for the appellee, Infinity Insurance. As to the filed rate doctrine, the Patel case involved the Florida OIR, and that panel said that the insured could go to the OIR and contest the rates there, and said that what they were seeking there was a return of that part of the premium or the part that was allegedly based on kickbacks, and that it clearly contemplated application of the filed rate doctrine. Very similar circumstances here. Thirteen times in the complaint, they complained about the increased premiums. Every one of the four counts in the complaint is based on the increased premiums. The undisputed testimony in the record, and our representative testified at a deposition, and that's attached to the Motion for Summary Judgment, Docket Entry 68-9. At page 101, he says that the premium charge is based on rates that were filed with the OIR, and that there's no way to extrapolate the rates that are specifically for the endorsement from the rates that are for. Why not? I mean, it would seem to me if you've got some policies with the endorsement and some without, you could look at them and tell what the price difference was. Because they're based on different risk pools, Your Honor. The risk pool, for example, for somebody who would choose a 10-20 policy for himself, but a 100-300 policy for the lessor is in a different risk pool, and apparently increased risk of accidents from somebody who is a 10-20 without the lessor liabilities endorsement, which means that they're probably owning their cars versus leasing their cars, and there's an increased risk for that, not just because of the lessor involved, but because the insured itself is going to be at a different level of risk than the insured without the lessor, without a lease, essentially. Would the agency have the authority to say, oh, this part of the premium, this is something for which there's no need for coverage? Yes, Your Honor. How do we know that? Well, the Patel case itself says that the OIR is in charge of those kinds of issues, and the statute allows insureds to contest rates at hearings and have hearings, and those are appealable to the District Court of Appeal in Florida, so there's a whole kind of administrative review process. That's a coverage question. It wouldn't be within the scope of their authority. No, not as a coverage question, only as a rate question, but you can say you shouldn't, as Judge Sutton said, you shouldn't offer any increased rate for this because there's no risk. And they have done that before. They've said this product, it's excessive, the rate's excessive because the product adds nothing. There's zero risk. Correct. Have they done that before, the agency? I'm not sure. I can't say there's anything in the record. And their authority goes just to rate? They can't say you can't sell this kind of policy? Yeah, I think they can say you can't sell this kind of policy, sure. Okay. Yeah. And as to the merits, their whole claim is based on what I call a faulty syllogism, and it's summarized at page 11 to 12 of their initial brief, and they also argued it below in opposition to the motion for summary judgment. And I want to quote it because they, I think, try to backtrack from it in the reply brief, but they definitely argue this. And they say, Graves foreclosed lessor liability secondary to the liability of a lessee, i.e., vicarious liability. And that is the only type of liability that Infinity purports to bind itself to and identify under the terms of the lessor liability endorsement. Accordingly, since the triggering event that could force Infinity to identify a lessor is foreclosed, Infinity's promise, i.e., to identify your lessor pursuant to the terms listed herein, is nothing more than an illusory promise to do nothing. So the syllogism is the policy covers vicarious liability. Graves forecloses liability for vicarious liability for a lessor, and therefore the policy covers nothing. This is faulty for several reasons, which we've outlined in our brief. The first is that it covers more than vicarious liability. It covers direct liability, direct negligence of the lessor, and that's something that the Graves Amendment did not foreclose. And so even after the Graves Amendment, lessors are liable for their own negligence, and courts have found them or at least stated that they can be found liable for negligent entrustment of a vehicle to a lessee and also for negligent maintenance. Secondly— Is there any record of how often these policies pay out for lessor negligence? No, Your Honor, but there is the record. We did file an exhibit. It's at DE-77, which shows just how often, as an example, Ford Motor Credit is sued for vicarious liability. And so that implicates the second argument, which is— Duty to defend, is that— Exactly, the duty to defend. They concede that the policy covers vicarious liability. And to determine the duty to defend, this Court and other courts have said you look at two things. You look at the complaint, the allegations in the complaint, not whether they're true or not, and you look at the policy. And if the complaint brings the facts within the scope of coverage under the policy, then there's a duty to defend. And so by their own admission that it covers vicarious liability, we have a duty to defend. And in fact, even after the Graves Amendment, that's basically the coverage that lessors want because the majority of the time when they're sued or they're included in a lawsuit, it's for the vicarious liability for something that the lessee did. And we show— It's in defense of the Graves Amendment and when, but they haven't been responsible for paying for that law. You're doing that, right? Exactly, Your Honor. The Graves Amendment provides a defense to liability, not a defense to coverage. So that has still—and in fact, theoretically, if a court says, no, the Graves Amendment doesn't apply, you're going to be vicariously liable, and a jury finds you vicariously liable, then the insurance company must identify because it is covered under the policy. The third basis—I'm sorry, Your Honor, you had a question. I've just—I've read Patel and I just can't remember the punchline. Is that jurisdictional? Does that have to go first? Is that the first order of business? Withstanding? No, the filed-rate doctrine. Filed-rate doctrine. Is that jurisdictional is what I'm asking. Is that necessarily the first point one has to address? I don't think it's jurisdictional. What I think may be jurisdictional is the standing argument. Okay, so as between filed-rate and the points you were just making, what do you think is the stronger ground from your perspective? I think the easiest ground is on the merits and the fact that there's a duty to defend. It's a very simple analysis in that case. It can't be jurisdictional because that's a doctrine that really arises as a matter of Florida law. It doesn't—and because this is a federal court, federal law would really determine what our jurisdiction is, right? Yes, Your Honor. It's more of a prudential document and a deferential doctrine to the administrative agencies of the state or the federal government. Right. But we do assert a threshold jurisdictional issue, which is the standing issue, which is that until an insurer has been denied coverage under—has filed a claim and has been denied coverage for that claim, then there's no case or controversy to resolve. Go ahead. The problem I have with that is they're seeking damages, right? And they're saying we paid more than we should. That seems to be clearly to establish standing. I mean, in other words, it's fraud from their perspective, and the money's gone. It's not in their pockets, and they got nothing in return. Why can't you immediately correct? I'm not—it's their theory of the case. That is their theory of the case. It seems to me you can immediately correct that. Well, Your Honor, to tell you the truth, I'm not going to harp on too much on standing because— I mean, that seems to us to allege an injury that would be fairly traceable to your client and is redressable through an award of damages. Yes, and to tell you the truth, I think the important point in this appeal is that the public knows that there is coverage on these and that lessors are still in danger of being sued for vicarious liability, and therefore they're going to need the coverage under the policies, and we've never denied— If we do that, we're not stepping on the toes of the agency. No, Your Honor, I don't think you are. If there's no other questions, then I'll rest on my brief as to the other points and ask you to affirm the district court. Thank you. Thank you, Mr. Cantero. Mr. Martinez, you have three minutes. You are all that stands between me and my weekend. Your Honor, thank you for those three minutes. I wanted to address a few points that were made with respect to Infiniti's argument that this is one premium that is not unbondable, that cannot be separated, and it's a single one, and I would like to refer to their answers to interrogatories, and this is docket entry 66-1, answer number three, and we ask identifying dollars, the portion of each premium you have charged plaintiff that is attributable to the writer. The portion of the premium. And the argument on their part that this is a single premium. Right. Well, that is not—that cannot be separated. The question presupposes that it is. It says identify the portion of the premium. The premise of—that question is premised on the notion that it's a single premium. Because when they charge clients— Because you've identified some of it as a portion of a single premium. Right, because they charge clients, as any insurance client gets, a single premium that you don't have to pay separate checks for to get it. I don't see how that answer, whatever the answer is, can possibly help you when the premise of the question is that it's a single premium. What am I missing? Well, let me get to the answer because they're saying— Okay. Plaintiff's policy was in effect for one year. During that year, plaintiff paid a premium of $110 that is attributable just to the writer. Okay. So that is— That's just a portion. Correct. So on the issue of the file rate doctrine that they're making is that this would be— that we would be challenging the reasonableness of a rate because the court would have to determine what portion of these premiums are for this one product and it cannot be done. But they, in fact, can do it by looking at those rate tables, by separating those customers that do not get the product from those that do get it. So this is one portion that ensures policyholders get charged just for that one product and is easily ascertainable, Your Honors. That's the first issue. 30 seconds. And that we do not consider that this product covers vicarious liability at all. What we say is that it purports to provide that coverage. But again— I think his point is that you do argue that because you point out that that kind of coverage is— the need for it is barred by the Graves Amendment. No, no, no, Your Honor. Just to make clear, there is a need for that coverage and there is a need. But this product, the way it's structured, does not provide it. That's the argument that we're making because without indemnity coverage, there cannot be duty to defend coverage. And that's the argument that we're making. Okay. I think we understand your case, Mr. Martinez. Thank you very much. Have a good weekend. Thank you. You too. We are adjourned for the week. All rise.